**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| ARTHUR LEE WARREN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PFC HOUSTON SAUER, L509 and PFC )<br>NAIM VAUGHN, L507, )<br>)<br>Defendants. )<br>_____ ) | No. 4:19-cv-02722-DCN<br><br>**ORDER** |

      This matter is before the court on Magistrate Judge Kevin McDonald's Report and Recommendation ("R&R"), ECF No. 69, that the court grant defendants Houston Sauer ("Officer Sauer") and Naim Vaughn's ("Officer Vaughn") (collectively, the "Officers") motion for summary judgment, ECF No. 56. Plaintiff Arthur Lee Warren ("Warren") filed the instant action pro se[1] against the Officers pursuant to 42 U.S.C.

---

[1] On January 8, 2021, Warren filed a motion to appoint counsel. ECF No. 78. A plaintiff does not have an absolute right to appointed counsel in a case filed pursuant to 42 U.S.C. § 1983. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir.1987). While the court has discretion to appoint counsel for an indigent in a civil action under 28 U.S.C. § 1915(e)(1), Smith v. Blackledge, 451 F.2d 1201 (4th Cir. 1971), such appointment "should be allowed only in exceptional cases," Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). After careful review, the court has determined that no exceptional or unusual circumstances are present that would justify the appointment of counsel, nor would Warren be denied due process if an attorney were not appointed. See Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989). "The issues in most civil rights cases are not complex, and whenever such a case brought by an uncounseled litigant goes to trial, the court outlines the proper procedure so the uncounseled litigant will not be deprived of a fair opportunity to present his or her case." Williamson v. Stephan, 2021 WL 253534, at *9 (D.S.C. Jan. 26, 2021), report and recommendation adopted, 2021 WL 809424 (D.S.C. Mar. 3, 2021). Moreover, Warren has demonstrated through his filings, including his objections to the instant motion, that he is capable of proceeding pro se. Accordingly, Warren's motion for discretionary appointment of counsel under 28 U.S.C. § 1915(e)(1) is denied.

1

§ 1983 alleging violations of his constitutional rights. For the reasons set forth below, the court adopts in part the R&R and grants the motion for summary judgment.

## I. BACKGROUND

This action arises out of Warren's arrest following a traffic stop on April 30, 2019 by Officers Sauer and Vaughn of the City of Loris Police Department in Horry County, South Carolina. ECF No. 1, Compl. Officer Sauer initially pulled Warren over for broken taillights. ECF. No 56-1 at 1. Warren presented a South Carolina identification card in the name of James Edward Brown.[2] Id. at 2. Shortly thereafter, Officer Sauer radioed his partner, Officer Vaughn, for backup. Id. Dispatch reported that the driver's license for James Edward Brown was under suspension. Id. at 3. The Officers approached the vehicle and asked Warren to exit. Id. Warren exited the vehicle, at which point the Officers informed him that he was under arrest for driving with a suspended license and attempted to handcuff him. Id. Warren fled. Compl. at 7; ECF No. 56-1 at 3. The Officers contend that Warren "lunged" between them and Officer Sauer contends Warren struck him in the face in the process. ECF No. 56-1 at 3. Warren, on the other hand, admits to running away, but claims he "pulled away," rather than lunged, and denies striking Officer Sauer in the face. ECF No. 73 at 1. Officer Sauer then wrestled Warren to the ground, where Warren admittedly continued to resist arrest. Compl. at 7; ECF No. 56-1 at 3. Officer Sauer called dispatch for additional backup. ECF No. 56-1 at 4.

---

[2] Warren was later identified at the station as Arthur Lee Warren and found to have warrants out for his arrest for burglary and attempted murder.

The two parties disagree as to what transpired during the struggle. Warren contends that, once on top of him, the Officers began striking him in the head with closed fists and kicking him in the torso with their boots while he resisted "by turning his body from side to side." Compl. at 7. Meanwhile, the Officers claim that during the struggle, Warren gained control of Officer Sauer's taser and discharged it, briefly shocking Officer Sauer and hitting Officer Vaughn's shirt with one of the probes. ECF No. 56-1 at 6. The Officers also contend that following their verbal commands to drop the taser and hand strikes, Officer Vaughn delivered a single knee strike to Warren's side, causing him to drop the taser. Id. Warren denies ever having possession of or discharging the taser. ECF No. 73 at 2.

When the third officer arrived on the scene, the three officers collectively gained control of Warren, rolled him onto his chest, and placed him in handcuffs. ECF No. 56-1 at 7. Roughly thirty minutes later, while in handcuffs, Warren vomited, which he alleges was a result of injuries sustained in the struggle. Compl. at 8. EMS arrived on the scene, and Warren was transported by the Officers to the hospital, where he was deemed fit for discharge to the J. Reuben Long Detention Center six hours later. ECF No. 56-3 at 7. Warren alleged that he suffered a swollen face and head as well as pain in his ribs as a result of his encounter with the Officers. Id.

On September 25, 2019, Warren filed the instant pro se action against the Officers pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Eighth, and Fourteenth Amendment Rights due to excessive force used by the Officers. Compl. On October 23, 2019, the Magistrate Judge issued an R&R recommending summary dismissal of the

action,[3] ECF No. 13, and this court adopted the R&R and dismissed the case, ECF No. 18. On appeal, the Fourth Circuit found that Warren stated a plausible claim of excessive force, vacated the order, and remanded it to the Magistrate Judge for further proceedings.[4] ECF No. 31.

On August 14, 2020, Officers Sauer and Vaughn filed a motion for summary judgment. ECF No. 56. On September 18, 2020 and October 8, 2020, Warren filed an affidavit and response in opposition, respectively. ECF Nos. 62, 65. The Officers replied on September 23, 2020 and October 9, 2020, respectively. ECF. Nos. 64, 66. The Officers also sent copies of dash camera and body camera footage to the court for review. ECF Nos. 56-1; 56-2; 62-1. Pursuant to local rule, the matter was assigned to Magistrate Judge McDonald. On October 26, 2020, Magistrate Judge McDonald issued an R&R recommending that this court grant the motion for summary judgement. ECF No. 69. On November 30, 2020, Warren filed objections to the R&R, ECF No. 73, which were followed by a reply from the Officers, ECF No. 76, and a sur-reply by Warren, ECF No. 77. These motions have been fully briefed and are now ripe for the court's review.

## II. STANDARD

---

[3] The R&R relied in part on Younger v. Harris, 401 U.S. 37 (1971) to dismiss the case due to a pending state criminal prosecution against Warren at the time of the action. The R&R found under Younger that, "Because a federal court may not award injunctive relief that would affect pending state criminal proceedings absent extraordinary circumstances, this court should abstain from interfering with it." ECF No. 13 at 4-5. Next, the R&R recommended dismissing rather than staying the case pending resolution of the charges after finding factors from Graham v. Connor, 490 U.S. 386 (1989) weighed against Warren, including severity of crime, threat to officers and community, and resisting arrest. Id. at 6.

[4] The Court of Appeals found that Younger abstention did not bar Warren's claims. ECF No. 31 at 3. Further, the Court of Appeals found that Warren stated a claim of excessive force because he "plausibly alleges force in excess of that necessary to place him under arrest." Id.

### A. Report & Recommendation

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270–71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Id.

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

The R&R recommends that this court grant the Officers' motion for summary judgment on four grounds. First, the R&R concludes that Warren's claims are barred under Heck v. Humphrey, 512 U.S. 477, 487 (1994). Second, the R&R concludes that Warren's claims fail on their merits because the Officers' use of force was reasonable as a matter of law under Graham v. Connor, 490 U.S. 386, 394–95 (1989). Third, the R&R concludes that the Officers did not violate a clearly established constitutional right and are therefore entitled to qualified immunity for claims against them in their individual capacities. Fourth and finally, the R&R concludes that Warren failed to allege violations by Officer Sauer in his official capacity.

6

Warren essentially raises three objections to the R&R.[5] First, Warren objects to the R&R to the extent it contemplates that Warren lunged between the Officers and struck Officer Sauer in the face. ECF No. 73 at 1. Second, Warren objects to the R&R to the extent it finds that he was ever in possession of the taser. Id. at 2. And third, Warren objects to the R&R's finding that Heck bars his claims. Id. at 4. The court proceeds in reverse order, beginning with Warren's third objection to determine whether the instant action is barred under Heck. Finding that it is not, the court next reviews Warren's factual objections as they bear on the merits of Warren's claims. Upon review, the court finds that Warren's claims fail on their merits and grants the Officers' motion for summary judgment.

Warren argues that the R&R was incorrect in finding that his claims are barred under Heck. In Heck, the Supreme Court held that a plaintiff cannot bring a § 1983 suit for damages where a judgment in favor of the plaintiff would necessarily imply the invalidity of his prior conviction or sentence. 512 U.S. at 486–87. To bring such a claim, a plaintiff must first prove that the conviction has been reversed, expunged, or otherwise declared invalid. Id. Warren is currently serving a three-year sentence for pleading guilty to "Assaulting a Police Officer While Resisting Arrest" in violation of S.C. Code Ann. § 16-09-0320(B). See ECF No. 56-4. The R&R found that Warren's success on his claims in this action would necessarily imply the invalidity of that conviction, and therefore such claims must fail pursuant to Heck. The court disagrees. The only

---

[5] As a fourth objection, Warren argues that, contrary to the R&R's description of events, Warren, not the Officers, requested medical attention and the Officers, not EMS, transported him to the hospital. Id. at 3. The court overrules this objection summarily, finding that this dispute of fact in no way affects the R&R's analysis of the motion for summary judgment nor this court's review of same.

evidence before the court of Warren's conviction is his sentence sheet, id., which does not contain any factual basis regarding the conduct to which he pled guilty. As the Fourth Circuit explained, "[w]ithout knowing the factual basis for [the plaintiff's] plea, [the court] cannot determine whether his claim of [excessive force] would necessarily imply invalidity of his earlier conviction for assaulting an officer while resisting arrest." Riddick v. Lott, 202 F. App'x 615, 616 (4th Cir. 2006); see id. ("The Heck analysis requires a close factual examination of the underlying conviction."). This is because a § 1983 claim would not necessarily imply the invalidity of an assault and resisting arrest conviction, and therefore would not be barred by Heck, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Id. The record is not sufficient for the court to make such a determination. The R&R incorrectly finds that Warren's admissions in this case compensate for the lack of a factual basis for Warren's conviction. Not so. While Warren admits in the instant action to resisting arrest throughout the encounter with the Officers, the record does not show what facts Warren admitted to in pleading guilty. Heck only bars claims where judgment in favor of Warren would necessarily imply the invalidity of his conviction, not the invalidity of his admissions in this case. Therefore, the court declines to adopt the R&R in this respect and instead finds that Warren's claims are not barred under Heck. Having so found, the court proceeds with its review of Warren's factual objections.

Warren objects to statements in the R&R that Warren lunged between the Officers, struck Officer Sauer in the face, and tased the Officers. At the outset, the court notes that the Magistrate Judge in no way finds in the R&R that Warren committed any of these acts. The R&R merely notes the Officers' position on the issue in the

8

background section by stating that, "Ofc. Sauer contends that, in his attempt to flee, [Warren] lunged between the Officers and struck Ofc. Sauer in the face in the process . . . ." ECF No. 69 at 2 (emphasis added). The Magistrate Judge also specifically acknowledges that, "[i]t is unclear from the body and dash cameras who or what caused the taser to discharge" and never finds that Warren tased an Officer or possessed the taser. ECF No. 69. In any event, the court overrules the objections, finding that these disputes of fact do not undermine the R&R's recommendation that the court grant summary judgment on the merits—specifically on the basis that the Officers' use of force was objectively reasonable.

   Claims that law enforcement officials have used excessive force in the course of an arrest are "most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures, and must be judged by reference to the Fourth Amendment's 'reasonableness' standard." Graham, 490 U.S. at 387 (internal citation omitted). The Fourth Amendment test is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The test of reasonableness is "not capable of precise definition or mechanical application." Id. at 396. In determining the reasonableness of the use of force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the importance of the governmental interest alleged to justify the intrusion. Id. (citations omitted). Courts have "long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat

thereof to effect it." <u>Id.</u> (citations omitted). This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders. <u>Id.</u>

The reasonableness test requires "careful attention to the facts and circumstances of each particular case," and courts employ the following factors in their analysis: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. <u>Id.</u> at 396 (citing <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985)). The Supreme Court explained this reasonableness inquiry by noting that there must be an "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Id.</u> at 396–97.

Warren has failed to create a genuine factual dispute regarding whether the Officers used excessive force. As the Magistrate Judge correctly observes, the video evidence contradicts Warren's allegations about the extent of force used against him, including claims that the Officers beat him with their fists and kicked him multiple times. The video evidence instead shows that the Officers "briefly used hand strikes and a knee strike as they were attempting to arrest [Warren] . . . ." ECF No. 69 at 11. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment."). Even if Warren did not lunge at the Officers, strike Officer Saul in the face, or tase the Officers, the <u>Graham</u> factors weigh in favor of finding their use of force reasonable as a matter of law. The Magistrate Judge does not rely on any of these

disputed facts in his analysis of the Graham factors, yet correctly concludes that under the circumstances the Officers' use of force was objectively reasonable.

The Magistrate Judge first properly observes that the severity of the crime was initially minor because Warren was stopped for a minor traffic violation. However, Warren's criminal conduct escalated when he attempted to flee, resisted arrest, and assaulted an officer. This conduct, which Warren does not dispute, constitutes a felony punishable by up to ten years imprisonment. See Compl. at 7 ("I then pulled away from them and began to run away . . . ."; "While I was on the ground they was [sic] trying to put the handcuffs on me I was still resisting truning [sic] my body from side to side . . . ."). The Magistrate Judge continues to discuss the factors concerning whether Warren posed an immediate threat to the safety of the Officers and whether Warren was actively resisting arrest. As discussed above, the Magistrate Judge finds that it "is unclear" who or what caused the taser to discharge during the encounter. ECF No. 69 at 3. However, upon reviewing dash and body camera footage, the Magistrate Judge determined that, at the very least, the taser was discharged and the Officers reasonably believed it was discharged by Warren, as evidenced by the Officers' commentary in the video and the evidence that Officer Sauer felt a shock. See ECF No. 69 at 9–10 (noting that "While attempting to arrest the plaintiff, the Officers heard the distinctive rapid clicking noise of a taser being discharged[.] To determine if Ofc. Sauer had activated the taser, Ofc. Vaughn asked Ofc. Sauer, "you got that?"[]. Ofc. Sauer indicated that he did not, and Ofc. Vaughn then asked, "that's him?"[]. At or around that time, Ofc. Sauer received a brief shock."). Upon review of the same footage, this court agrees with the R&R's discussion of the events surrounding the taser discharge. Based on the video footage and

affidavits consistent with such footage, there is no genuine dispute over whether the Officers reasonably believed that Warren had control of the taser.  As such, any reasonable factfinder would recognize the danger the Officers reasonably believed they would subject themselves to if they failed to control Warren.  See Elliott v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996) ("The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm.").  Warren's objection that he did not, in fact, have or discharge the taser does not negate this conclusion because there is no dispute that the Officers reasonably believed that he did.

Disregarding the taser altogether, the Magistrate Judge points out that the Officers' use of force occurred during an attempt to arrest Warren, "who had tried to flee, assaulted one of them, and was violently resisting."  ECF No. 69 at 11.  Again, Warren does not dispute that he attempted to flee and then actively resisted arrest by turning his body from side to side while the Officers were on top of them.[6]  The court agrees that these undisputed facts on their own support a finding that the force used was reasonable.  "[I]t is clearly established under Fourth Circuit law [] that it is reasonable for a police officer to use physical force, including striking a suspect with his closed fist [], to subdue a suspect who resists arrest by refusing to present his hands to be cuffed."  Sloan v. Dulak, 868 F. Supp. 2d 535, 543 (W.D. Va. 2012).  Indeed, as the Fourth Circuit has previously noted, "[i]f courts refused to permit the use of proportionate force [when a suspect resists arrest], we would be inviting any suspect who is unhappy about an arrest

---

[6] Warren pled guilty to assaulting an officer at some point during the altercation.  See ECF No. 56-4.  However, because neither the plea nor video footage is clear about the nature of the assault or at what point it occurred, the court, viewing the evidence in the light most favorable to Warren, disregards the assault for purposes of its consideration of the Graham factors.

to resist that arrest in the hopes that the officers will simply desist rather than risk liability." Brown v. Gilmore, 278 F.3d 362, 369–70 (4th Cir. 2002).  In keeping with this principle, in Brown v. Oconee Cty. Sheriff's Off., the court found that an officer punching the plaintiff in the back of the head was objectively reasonably when the plaintiff was resisting arrest and kicking the window and door of the arresting officer's patrol car.  2020 WL 8339965, at *4 (D.S.C. Sept. 21, 2020), report and recommendation adopted, 2021 WL 288417 (D.S.C. Jan. 27, 2021).  Similarly, in Terrell v. City of Spartanburg, the court found that because "the video recording ma[de] clear that the officers at all times were struggling with [the p]laintiff in an attempt to gain control of him," an officer striking the plaintiff with his right fist and right knee several times in the chest and jaw was objectively reasonable.  2018 WL 4782334, at *2 (D.S.C. Sept. 12, 2018), report and recommendation adopted, 2018 WL 4775579 (D.S.C. Oct. 3, 2018).

Warren admittedly resisted arrest throughout the encounter and turned his body from side to side while Officers attempted to arrest him.  Video evidence further shows Warren struggle throughout the encounter with the Officers in an attempt to stand, rather than obey orders to stay on the ground and allow the Officers to arrest him.  Therefore, even viewing the factual disputes Warren raises in a light most favorable to him, a reasonable officer under these circumstances would be expected to apply the force used here to gain control of and arrest Warren.  The court finds the evidence insufficient to give rise to a genuine issue of fact regarding the Officers' use of force.  In other words, the Officers' use of force was objectively reasonable as a matter of law, and Warren's claim of excessive force fails.  See Woods v. Cashier, 2006 WL 2385275, at *10 (D.S.C. Aug. 17, 2006) (granting summary judgment on the grounds that officers' kicking,

punching, and striking plaintiff was objectively reasonable "especially in light of [the p]laintiff's own admissions that he resisted being taken into custody and was still resisting when officers tried to place him in the police car"). Warren's objections to the contrary are overruled.

## IV.  CONCLUSION

For the foregoing reasons, the court **ADOPTS** the Magistrate Judge's R&R in part in accordance with this Order and **GRANTS** Officers Sauer's and Vaughn's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**April 8, 2021
Charleston, South Carolina**